## Drake & Hostetler v. A. W. Lux, Administrator.

## A. W. Lux, Administrator, v. Drake & Hostetler.

1. APPEAL—*when should be taken from the county to the circuit court.* An appeal from a judgment of the county court allowing or disallowing a claim against an estate, is required to be taken to the circuit and not to the appellate court.

Proceeding in court of probate. Appeals from the Circuit Court of Moultrie County; the Hon. WILLIAM C. JOHNS, Judge, presiding. Heard in this court at the November term, 1905. Reversed and remanded. Opinion filed March 20, 1906.

EDEN & MARTIN, for Drake & Hostetler.

E. J. MILLER, for A. W. Lux, Administrator.

MR. JUSTICE RAMSAY delivered the opinion of the court.

Drake & Hostetler presented two claims in the County Court of Moultrie county against the estate of Minerva Brown, deceased; one was upon a note for $800 dated April 29, 1895, due in three years, with interest at seven per cent. which note was signed by said Minerva Brown and C. W. Brown, her husband; the other of said claims was upon two notes, each dated April 30, 1896, one for the sum of $986.62 due in one day from its date, signed by C. W. Brown and by

Brown and Company (which said firm was alleged to be composed of deceased and C. W. Brown), and the other for the sum of $4,035 due in one year from its date, signed by the same parties, each drawing interest at seven per cent. per annum. The claims were heard in the County Court and such proceedings had that an appeal was taken to the Circuit Court of that county, where the two claims were heard together by the court, without a jury, the first claim being known as No. 5868 and the second as No. 5869.

Upon the trial of the causes, so heard together, the Circuit Court found the issues in said No. 5868 in favor of the estate and entered judgment against the claimants for costs, from which judgment the claimants have appealed; and in No. 5869 the Circuit Court found the issues in favor of the claimants and against the estate in the sum of $586.23, from which judgment the estate has appealed. The two cases are here heard together upon appeal upon one bill of exceptions.

It appears from the evidence that C. W. Brown, husband of deceased, who was engaged in the grain business, began doing business about the year 1886 with the banking firm of Drake & Smith. During a part of the time, at least, he used the name of Brown and Company, of which firm deceased was, it is claimed, a member. Brown began borrowing money at the bank of Drake & Smith to use in his business and claims that the contract to loan then made, and which has been carried along through the business of many years following, was an agreement to pay one per cent. a month to the bank for the use of the money and was therefore usurious.

The claimants deny the charge of usury and attempt to explain, by a system of averages, that the rate of interest upon overdrafts would have been only seven per cent. or a fraction less. We feel constrained to hold, however, that the trial court committed no error in finding that usury was contracted for and paid upon the loan.

Mr. Brown testified that when he first opened the account with Drake & Smith that he agreed to pay one per cent. a

month for the use of the money and the written statements made by the bank and introduced in evidence tend to corroborate Mr. Brown in his contention, for they show clearly that at the end of each month in many instances the monthly balance was taken as the basis of an interest charge and the interest extended for the month, at one per cent. Furthermore Drake himself testified that "I did make that charge of one per cent. of what his (Brown's) balance would be on the last day of the month as an inducement to keep his balances down."

We fail to see in what way an effort on the part of the bank to induce Brown to keep his balance down tends to disprove the charge of usury, and hold that there was sufficient evidence to fully warrant the finding that the contract as first entered into was an agreement to pay interest at one per cent. a month, and that such rate of interest was never changed, but continued through the entire time of the loan from its inception.

Mr. Brown first opened the account at the bank in the year 1886, with Drake & Smith, and continued to do business with that firm until Smith was succeeded in the business by one Dyer in 1888. The business was then continued with the firm of Drake & Dyer until the year 1890, when the firm was changed by Dyer going out and Hostetler and son coming in, after which time the firm was known as Drake, Hostetler & Son. It so remained until the death of the elder Mr. Hostetler, when the firm name was changed to Drake & Hostetler. We hold that the loan, so far as claim No. 5869 is concerned, is one continuous transaction from its beginning with Drake & Smith, through all of the dealings therewith by the different firms, and that each succeeding firm has accepted the account chargeable with notice of the claim of usury. Drake, who was a member of the first firm which made the loan, has been a member of each succeeding firm and the senior member of the present firm which presents the accounts, and notice to him of the claim of usury would be notice to each of the firms. The books of the firm, so far as they appear in evidence, also seem to have been

kept in a manner to give notice to a purchaser of the bank's
business, of the claim now made that usury was involved in
the loan, and purchasers of the bank's business must be held
to have accepted the account subject to that infirmity.

We think the trial court was in error in holding that there
was usury involved in the $800 loan, which is the basis of the
claim in No. 5868. The note of $800 was given by de-
ceased and Brown as a credit upon the general account
which Brown was then running at the bank in the name
of Brown & Company. The evidence seems to show con-
clusively that at the time the note for $800 was given that
Brown & Company owed the bank between $4,000 and $5,-
000. C. W. Brown does not seriously contend that at
that time the indebtedness was not over $4,000 and says he
cannot say but that it was over $5,000.

There is no evidence offered to show that on April 29,
1895, the greater portion of the sum due from Brown &
Company to the bank was not for principal. Counsel for de-
ceased do not claim that all usury involved exceeds the sum
of $3,076, so the conclusion is irresistible that on the day
the $800 note was made and credited there was due from
Brown & Company as *principal* to the bank a sum greatly in
excess of $800. That being true then the credit arising
from the giving of that note could well have been applied to
such principal indebtedness. Since no directions are shown
to have been given as to the application of the credit, it must
be presumed to have been applied upon that part of the in-
debtedness that would be legal and collectible. It then be-
ing presumed that such note was applied upon the valid
indebtedness, *i. e.,* the principal, and since that note itself
drew a legal rate of interest (seven per cent.), it follows that
recovery upon that claim for full amount of the note and in-
terest should have been had.

Counsel for the estate of Minerva Brown made a motion
in the Circuit Court to dismiss the appeals in that court upon
the ground that the appeals from the decision of the County
Court should have been taken direct to this court, which mo-

tion the Circuit Court overruled. Upon which action of the court error is assigned.

There was no error in such ruling. This matter was very fully discussed by Judge Bailey in the case of Greir v. Cable, 159 Ill., 29, where it was held after a careful review of the different acts governing appeals from the County Court, that appeals from judgments of the County Court allowing or disallowing claims against estates are required to be taken to the Circuit Court and not to the Appellate Court, and that such a proceeding is not a suit or proceeding at law or in chancery within the meaning of the Appellate Court Act relating to appeals. The same doctrine was announced in Lynn v. Lynn, 160 Ill., 307–315.

The holding announced in those cases is in no way disturbed or qualified by the cases cited by counsel for the estate, viz.: Starrett v. Brosseau, 208 Ill., 408, and Sellers v. Thomas, 185 Ill., 384. In the former case the question as to which court the appeal should have been taken was in no way discussed at all, while as a matter .of fact the appeal was taken to the Circuit Court and the cause there re-tried. The latter case, above referred to, was a proceeding instituted in the County Court for the trial of right of property and had no connection at all with an estate, and was, therefore, a suit at law in that court from which an appeal would lie to the Appellate Court under the Appellate Court Act relating to appeals, as clearly explained in Greir v. Cable, *supra.*

While the evidence strongly tends to show that deceased was a member of the firm of Brown & Company, we do not find it necessary to express any holding upon that proposition, which is purely one of fact, and a re-trial of the case by the Circuit Court may render such determination wholly unnecessary, since counsel for the estate strongly contend that the evidence fully shows that the amount of usury involved from first to last on the general indebtedness represented by claim No. 5869 is $3,076, which, with payments of $2,884.73, aggregate a sum of $5,960.73, to liquidate the sum of $5,821.62.

The judgment of the Circuit Court upon the claim involved in No. 5868 is reversed and the cause remanded.

In No. 5869 the Circuit Court should have credited the bank with only such sums of money, or its equivalent, as were paid to Brown, or Brown & Company, allowing claimants no interest, and charging them with all payments made upon the account, including said $800 note (No. 5868). Such statement to begin with the inception of the account under Drake & Smith.

The case is accordingly also reversed and remanded that such action may be taken by the Circuit Court as comports with the views herein expressed.

*Reversed and remanded.*